**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MONSANTO COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:18-CV-1812-SNLJ** |
| | ) | |
| **HENSEL SEED SOLUTIONS LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on plaintiff Monsanto Company's motion to partially dismiss defendant Hensel Seed Solution LLC's First Amended Counterclaims and to strike from Hensel's First Amended Answer its Second, Third, Fifth, and Sixth Affirmative Defenses.

## I.    Factual Background

Plaintiff manufactures crop seeds which it sells to farmers through dealers. Defendant is or was a seed dealer for plaintiff.  Plaintiff and defendant entered into Monsanto Brand Seed Dealer Agreement ("MBSD") that sets forth the terms of the parties' relationship.  Plaintiff filed this lawsuit seeking damages for defendant's alleged breach of the MBSD and of the parties' credit agreement and for unjust enrichment.

Defendant filed an answer with affirmative defenses and counterclaims.  The first counterclaim is for price discrimination under Section 2(a) the Robinson Patman Act, and the second count is for breach of contract, including the implied covenant of good faith and fair dealing.  Plaintiff seeks dismissal of the second count.  Plaintiff also seeks an

order striking the defendant's affirmative defenses of set-off and recoupment, illegality, impossibility, and frustration of purpose.

## II. Motion to Dismiss Counterclaim

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555. A complaint must set forth factual allegations which are enough to "raise a right to relief above the speculative level." *Id.* at 555. However, where a court can infer from those factual allegations no more than a "mere possibility of misconduct," the complaint must be dismissed. *Cole v. Homier Distributing Co., Inc*., 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

To state a claim for breach of contract in Missouri, counterclaim-plaintiff Hensel Seed must allege

> 1) the existence and terms of a valid and enforceable contract between the [counterclaim-]plaintiff and [counterclaim-]defendant; 2) the rights of the

[counterclaim-]plaintiff and the obligations of the [counterclaim-]defendant under the contract; 3) breach of the contract by the [counterclaim-]defendant; and 4) damages suffered by the [counterclaim-]plaintiff due to the breach.

*Reitz v. Nationstar Mortg.*, LLC, 954 F. Supp. 2d 870, 884 (E.D. Mo. 2013). Here, Monsanto argues that Hensel has failed to allege a breach. Hensel alleges that

Monsanto breached the Monsanto Brand Seed Dealer Agreement…by providing excessive and discriminatory discounts to the Large Chain Retailers on [Dekalb Corn Seed] while lying to Hensel Seed about and concealing the reasons why the Large Chain Retailers were able to sell Dekalb Corn Seed at retail to farms and farmers at prices lower than Hensel Seed's wholesale price from Monsanto.

(#25 at 22.) Further, Hensel claims that the price discrimination made it impossible for Hensel to perform profitably under and realize the benefits of the MBSD Agreement.

Monsanto points out that no term in the MBSD precludes differential pricing among dealers or require disclosure of other dealers' pricing. Hensel counters that, because the Agreement is a contract for the sale of goods, the Uniform Commercial Code imposes a covenant of good faith and fair dealing, § 400.1-304 RSMo, and that sellers who have the ability to set open prices must do so in good faith, § 400.2-305(2) RSMo.

Monsanto argues, however, that the Agreement is a dealership or distributorship agreement, is not a contract for the sale of goods, and is thus not subject to the UCC's covenant of good faith and fair dealing. The parties cite conflicting law. Each of Monsanto's authorities can be traced back to *Tile–Craft Products Co. v. Exxon Corporation*, 581 S.W.2d 886, 889 (Mo. App. E.D. 1979), which merely observed that a distributorship entity was not <u>itself</u> a good under Article 2 of the Uniform Commercial

Code.  *See Vigano v. Wylain, Inc*., 633 F.2d 522, 525 (8th Cir. 1980) and *Kansas City*

*Trailer Sales v. Holiday Rambler Corp.*, 92-0377-CV-W-6, 1994 WL 49932, at *5 (W.D.

Mo. Feb. 16, 1994) (both citing *id.*).

More recent law supports plaintiff's position that "that section of the Uniform

Commercial Code provides that 'every contract or duty within this chapter imposes an

obligation of good faith in its performance or enforcement.'"  *Conoco Inc. v. Inman Oil*

*Co., Inc.*, 774 F.2d 895, 908 (8th Cir. 1985) (quoting *ABA Distributors, Inc. v. Adolph*

*Coors Co*., 542 F. Supp. 1272, 1285 (W.D. Mo. 1982)).  *Conoco*, which addressed a

breach of contract claim on a distributorship agreement, observed that "this implied

covenant imposes upon each party the duty to do nothing destructive of the other party's

right to enjoy the fruits of the contract and to do everything that the contract presupposes

they will do to accomplish its purpose."  *Id.*  The Eighth Circuit noted, in a footnote, that

"there is no dispute that the [distributorship agreements] were contracts for the sale of

goods and thus governed by the Uniform Commercial Code."  *Id.* at 908 n.10.  Monsanto

thus insists that *Conoco* is inapplicable because the parties there did not dispute that the

contracts were for the sale of goods.  Tellingly, however, Monsanto's own pleading states

that it sold seeds to Hensel pursuant to the terms of the MBSD.  (#6 at ¶ 13.)

Accordingly, this Court holds that Hensel has sufficiently pleaded that its contract falls

within the Missouri UCC.

Monsanto next argues that even if the UCC applies, the good faith requirement

does not add a term to the agreement that the parties did not include.  *See Centerre Bank*

*of Kansas City, N.A. v. Distribs., Inc.*, 705 S.W.2d 42, 48-49 (Mo. Ct. App. 1985).

Where a contract expressly provides a pricing formula, Missouri courts will not

"implicitly inject additional terms governing this issue." *Massey v. Tandy Corp.*, 987

F.2d 1307, 1309 (8th Cir. 1993). The MBSD's pricing formula sets forth dealer-specific

and grower-specific differential pricing. Thus, Monsanto argues, § 400.2-305(2) RSMo's

good-faith requirement does not apply because the price was settled. Hensel's claim,

however, is based on Monsanto's extra-contractual actions involving the pricing it set for

other parties. This case is unlike the *Massey* case, upon which Monsanto relies, in which

the Eighth Circuit explicitly noted that the plaintiffs' claim for breach of the covenant of

good faith and fair dealing did not include that the defendant "charged them more than it

charged other franchises; rather, they contend the formula used by [defendant] was

irrational…". *Id.* at 1309. Regardless of which section of the UCC applies, for purposes

of Monsanto's motion to dismiss, Hensel has adequately alleged that Monsanto breached

the implied covenant of good faith and fair dealing.

Next, Monsanto argues that Hensel has not pleaded fraud with particularity as

required by Federal Rule of Civil Procedure 9(b). Rule 9(b) states that "in alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or

mistake." But, as this Court understands Hensel's pleading, Hensel does not bring a

standalone counterclaim for fraud. Rather, as Hensel explains in its response

memorandum, his breach of contract count is based on Monsanto's breach of the

covenant of good faith and fair dealing when it "fraudulently induce[d] Hensel Seed to

5

buy corn seed at grossly inflated and excessive prices." (#31 at 5.) Hensel adds simply that Monsanto "lied about and concealed" the price discrimination.

"Asserting claims premised on fraudulent conduct can trigger the obligation to plead with particularity." 5A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Fed. Prac. & Proc.* Civ. § 1297 (4th ed.) (collecting cases). For example, "[f]raudulent inducement claims will often arise in contract disputes under state law and are thus similarly subject to Rule 9(b) when brought in federal court." *Id.* "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009) (internal quotations omitted). Such claims must allege the "who, what, where, when, and how" of the alleged fraud. *Id.* Here, Hensel alleged nothing more than Monsanto "lied about" and "concealed" critical facts and provided no "who, what, where, when, and how" details required by Rule 9(b). Although the allegations are insufficient at this point, Hensel will be permitted to replead this claim with particularity.

Finally, with respect to the breach of contract claim, Monsanto argues that Hensel has not sufficiently alleged its own performance of contractual obligations. Hensel alleges that it purchased, marketed, and sold seed from Monsanto as an exclusive dealer from 2013 through 2017. For purposes of Monsanto's motion to dismiss, Hensel has sufficiently pleaded its own performance of the contract.

### III.    Motion to Strike

As for the plaintiff's motion to strike, Federal Rule of Civil Procedure 12(f) states that the Court "may strike from a pleading ... any ... immaterial ... matter ... on motion made by a party." Because they propose a drastic remedy, motions to strike are not favored and are infrequently granted. *Stanbury Law Firm, P.A. v. Internal Revenue Service*, 221 F.3d 1059, 1063 (8th Cir. 2000).

> As courts have observed, motions to strike can be nothing other than distractions. If a defense is clearly irrelevant, then it will likely never be raised again by the defendant and can be safely ignored. If a defense may be relevant, then there are other contexts in which the sufficiency of the defense can be more thoroughly tested with the benefit of a fuller record- such as on a motion for summary judgment.

*Shirrell v. St. Francis Med. Ctr.*, 1:13-CV-42 SNLJ, 2013 WL 3457010, at *1 (E.D. Mo. July 9, 2013) (internal quotations omitted).

Resolution of a motion to strike lies within the broad discretion of the Court. *Stanbury Law Firm,* 221 F.3d at 1063. "In ruling on a motion to strike, the Court views the pleadings in the light most favorable to the pleader." *Speraneo v. Zeus Technology, Inc.*, No. 4:12cv578-JAR, 2012 WL 2117872, at *1 (E.D.Mo. June 11, 2012) (citing *Cynergy Ergonomics, Inc. v. Ergonomic Partners, Inc.*, 2008 WL 2817106, at *2 (E.D.Mo. July 21, 2008)). "A motion to strike an affirmative defense should not be granted 'unless, as a matter of law, the defense cannot succeed under any circumstances or is immaterial in that it has no essential or important relationship to the claim for relief.' " *Id.* (quoting *Cynergy Ergonomics,* 2008 WL 2817106, at *2, and citing *Federal Deposit*

*Ins. Corp. v. Coble,* 720 F. Supp. 748, 750 (E.D.Mo. 1989)). A motion to strike should not succeed unless the party shows that it is prejudiced by the inclusion of a defense or that a defense's inclusion confuses the issues. *Cynergy Ergonomics,* 2008 WL 2817106, at *2. "The prejudice requirement is satisfied if striking the defense would, for example, prevent a party from engaging in burdensome discovery, or otherwise expending time and resources litigating irrelevant issues that will not affect the case's outcome." *Id.*

Monsanto contends that Hensel's affirmative defenses purporting to employ the Robinson-Patman Price Discrimination Act, 15 U.S.C. §§ 13-13a, as a shield against Monsanto's debt collection efforts are foreclosed as a matter of law. The Robinson-Patman Act prohibits "any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality." 15 U.S.C. § 13(a). Here, Hensel claims Monsanto sold seed to large chain retailers at prices far below the prices for which it sold seed to small retailers like Hensel. Although Monsanto's complaint seeks to recover money allegedly owed by Hensel for seed purchased on credit, Hensel's affirmative defenses include set-off and recoupment, illegality, impossibility, and frustration of purpose—all based on Hensel's price discrimination claim. Monsanto argues that these defenses must be stricken because, "even if the sale prescribed in the contract did give rise to a Robinson-Patman violation, … the contract is nevertheless enforceable." *Delta Marina, Inc. v. Plaquemine Oil Sales, Inc*., 644 F.2d 455, 458 (5th Cir. 1981). "The general rule is that an antitrust violation is a defense to enforcement of

a contract only if the judgment of the Court (enforcing the contract) would itself be enforcing the precise conduct made unlawful by the Act." *Id.* (quoting *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959)).  Although a contract can be intrinsically illegal under other antitrust statutes, "no single sale can violate the Robinson-Patman Act. At least two transactions must take place in order to constitute a discrimination." *Bruce's Juices v. Am. Can Co.*, 330 U.S. 743, 755 (1947).  A "violation, if there was one, is not inherent in the contract sued upon." *Id.*  Moreover, "courts should be reluctant to allow litigation over speculative, complex antitrust issues to infiltrate simple breach-of-contract claims when the contract on its face does not violate antitrust law." *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 701-02 (6th Cir. 2017), *reh'g denied* (Sept. 19, 2017) (citing *Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 516 (D.C. Cir. 1984)).

As a result, violation of the Robinson-Patman Act is not a defense to Monsanto's breach of contract claim.  *See Capital City Distribution, Inc., v. Classics Int'l Entm't, Inc.*, 95 C 5018, 1996 WL 535314, at *3 (N.D. Ill. Sept. 18, 1996) ("violation of the Robinson–Patman Act is not an affirmative defense to a claim for breach of contract"). In any event, Hensel brought a separate counterclaim for violation of the Robinson-Patman Act.  Thus, the affirmative defenses based on the Act complicate matters unnecessarily and will be stricken.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Monsanto's motion to dismiss counterclaims and strike affirmative defenses (#27) is GRANTED.

**IT IS FURTHER ORDERED** that Hensel's breach of contract counterclaim is DISMISSED without prejudice for failure to plead fraud with particularity.

**IT IS FURTHER ORDERED** that Hensel is granted leave to file any amended counterclaim by June 10, 2019.

**IT IS FURTHER ORDERED** that Hensel's affirmative defenses of set-off and recoupment, illegality, impossibility, and frustration of purpose are STRICKEN.

**IT IS FURTHER ORDERED** that Monsanto's motion to stay discovery (#18) is DENIED as moot.

**IT IS FINALLY ORDERED** that Monsanto's first motion to dismiss (#16) is DENIED as moot.

Dated this _20th_ day of May, 2019.


_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE