**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MONSANTO COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:18-CV-1812-SNLJ** |
| | ) | |
| **HENSEL SEED SOLUTIONS LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on plaintiff Monsanto Company's motion to dismiss defendant Hensel Seed Solution LLC's Second Amended Counterclaims.

**I.      Factual Background**

Plaintiff Monsanto manufactures crop seeds which it sells to farmers through dealers.  Defendant Hensel is or was a seed dealer for plaintiff.  Plaintiff and defendant entered into Monsanto Brand Seed Dealer Agreement ("MBSD") that sets forth the terms of the parties' relationship.  Plaintiff filed this lawsuit seeking damages for defendant's alleged breach of the MBSD and of the parties' credit agreement and for unjust enrichment.

Hensel filed an answer with affirmative defenses and counterclaims for  (I) price discrimination under Section 2(a) the Robinson Patman Act, and (II) for breach of contract.  This Court granted Monsanto's motion to dismiss Hensel's counterclaim for breach of contract but granted defendant leave to file an amended counterclaim.  Hensel filed the amended counterclaim on September 23, 2019, again bringing both Count I for

price discrimination and Count II for breach of contract.  Monsanto now seeks dismissal
of both counts.

## II.     Motion to Dismiss Counterclaim

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of
a complaint so as to eliminate those actions "which are fatally flawed in their legal
premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial
and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)
(quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint, or counterclaim
in this case, must be dismissed for failure to state a claim upon which relief can be
granted if it does not plead "enough facts to state a claim to relief that is plausible on its
face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the prior "no
set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts
"do not require heightened fact pleading of specifics, but only enough facts to state a
claim to relief that is plausible on its face." *Id.* at 555. A complaint must set forth factual
allegations which are enough to "raise a right to relief above the speculative level." *Id.* at
555. However, where a court can infer from those factual allegations no more than a
"mere possibility of misconduct," the complaint must be dismissed. *Cole v. Homier
Distributing Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556
U.S. 662 (2009)).

**A.     Count I**

Hensel's Count I is brought under Section 2(a) of the Robinson-Patman Act, 15 U.S.C. § 13(a).  The Act was originally enacted to curb localized price-cutting tactics and was amended in response to the advent of large chain stores and their perceived ability to obtain lower prices for goods than smaller competitors could demand.  *See Volvo N. Am., Inc. v. Reeder-Simco GMC, Inc.*, 546 U.S. 164, 175 (2006).  In its current form, Section 2(a) provides in relevant part:

> It shall be unlawful for any person engaged in commerce ... to discriminate in price between different purchasers of commodities of like grade and quality, ... where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them ....

15 U.S.C. § 13(a).  Hensel's claim is a "secondary-line" case, which involves "price discrimination that injures competition among the discriminating seller's customers…; cases in this category typically refer to 'favored' and 'disfavored' purchasers."  *Volvo Trucks N. Am., Inc.*, 546 U.S. at 176.  Hensel asserts it and other small independent dealers are "disfavored" purchasers, whereas large chain retailers are "favored."  To establish a claim, Hensel must show that (1) the relevant seed sales were made in interstate commerce; (2) the seeds were of "like grade and quality"; (3) Monsanto discriminated in price between Hensel and another purchaser of such Monsanto seeds; and (4) the "effect of such discrimination may be …to injure, destroy, or prevent competition" to the advantage of a favored purchaser.  *Id.* at 546 U.S. at 176-77.  Hensel

3

must also show antitrust injury. *See J. Truett Payne Co. v. Chrysler Motors Corp.*, 441 U.S. 557, 568 (1981).

Monsanto argues that Hensel has not sufficiently pleaded that the seeds at issue are of "like grade and quality." Hensel pleads that Monsanto sold its "DeKalb Corn Seeds…incorporating or involving Smart Stax Rib and/or VT2 Pro RIB technologies" at prices $100 less per bag to large chain retailers than the prices it sold to small retailers like Hensel. (#42 at ¶¶ 12, 15.) It states

> Every month for the years 2014 to 2017, Monsanto sold these same seeds, which are of like grade and quality, to the Large Chain Retailers at prices of at least $100 per bag lower, and at least 25% lower per bag, than the prices which Monsanto was selling them to Hensel Seed and other Independent Dealers.

(#42 at ¶ 14.) Defendant counters that because there are over 200 varieties of Dekalb branded corn seeds, and "almost 90" varieties have the technologies Hensel identifies, Hensel's pleading lacks the specificity required under *Twombly*, 550 U.S. at 555. Monsanto argues that this case is like *Tires Inc. of Broward v. Goodyear Tire & Rubber Co.*, 295 F. Supp. 2d 1349, 1353 (S.D. Fla. 2003), in which the plaintiff claimed price discrimination by a tire manufacturer among competing tire retailers but did not identify which specific tires were allegedly sold to others at lower prices. That court required plaintiff to identify the specific tires by make and model sold by Goodyear to a particular competitor. *Id.*

This case is distinguishable. In determining whether the DeKalb corn seeds sold to competitors were "of like grade and quality," it seems enough simply to identify a

category of seeds that have specific traits, like the Smart Stax Rib and/or VT2 Pro RIB technologies here.  Although there are supposedly 90 or so varieties of these specially traited seeds, they presumably don't differ fundamentally.  That is why they are varieties—varieties of seeds of like grade and quality.  And surely the rule doesn't require the plaintiff to mix or match 90 varieties of specially traited corn seeds in the pleading stage.

Next, Monsanto argues that Hensel has not pleaded "competitive injury," showing that Hensel lost a specific sale to a specific customer to a specific competitor because of the alleged price discrimination.  The Robinson–Patman Act does not "ban all price differences charged to different purchasers of commodities of like grade and quality." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 220 (1993).  Rather, the Act requires injury to competition.  *Id.*  "A hallmark of the requisite competitive injury…is the diversion of sales or profits from a disfavored purchaser to a favored purchaser."  *Volvo Trucks N. Am., Inc.*, 546 U.S. at 177.  Alternatively, "a permissible inference of competitive injury may arise from evidence that a favored competitor received a significant price reduction over a substantial period of time."  *Id.*

Monsanto insists that Hensel was required to identify the loss of a specific sale to a specific customer to a competitor.  To the extent such specifics are required at the motion to dismiss stage, Hensel has complied.  Indeed, Monsanto's version of the record is very misleading:  Despite Monsanto's representation that Hensel has not identified any lost customers, Hensel identified "West Central FS" as a major customer it lost to a

"Large Chain Retailer."  The chain retailers, Hensel explains, had bought the seeds from Monsanto at a 25% discount, and therefore were able "to sell the seeds at an amount below what Hensel Seed was able to purchase the seeds for at wholesale."  Furthermore, those chain retailers in direct competition with Hensel specifically included Nutrien Ag Solutions, FS Seed, and Crop Production Services.   Hensel thus pleads both diversion of sales or profits to favored purchasers at the expense of independent seed dealers like itself, as well as least three years of significant price reductions.  Hensel has pleaded competitive injury to withstand Monsanto's motion to dismiss.

Next, Monsanto contends that Hensel failed to plead antitrust injury.  In contrast to competitive injury, "[a]ntitrust injury is the threshold issue that plaintiffs must establish in order to have standing to sue under the antitrust laws."  *Fischer v. NWA, Inc.*, 883 F.2d 594, 597 n.5 (8th Cir. 1989).  The plaintiff must have been "the target of the anticompetitive activity, not one who has merely suffered indirect, secondary, or remote injury. … In short, consequential injury is not an antitrust injury."  *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 520-21 (8th Cir. 1992) (internal quotations omitted) (quoting *Midwestern Waffles, Inc. v. Waffle House, Inc.*, 734 F.2d 705, 710-11 (11th Cir.1984)). The focus of "antitrust injury" is on whether the challenged conduct has actually caused harm to the plaintiff.  *J. Truett Payne*, 451 U.S. at 561-62.  Such "antitrust injury" should be "the type of loss that the claimed violations would be likely to cause."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).

Monsanto argues that Hensel has only conclusorily pleaded that its claimed injuries are attributable to any alleged price discrimination by Monsanto.  This Court finds that Hensel has sufficiently pleaded antitrust injury.  The injuries of which Hensel complains—lost sales due to an inability to compete with Monsanto's favored purchasers—are indeed the injuries one would expect from alleged price discrimination.  Hensel pleads that such was the case.

### B.      Count II

This Court dismissed Hensel's First Amended Counterclaim's Count II for breach of contract with leave to replead because, as it pertained to fraud allegations,

> Hensel alleged nothing more than Monsanto "lied about" and "concealed" critical facts and provided no "who, what, where, when, and how" details required by Rule 9(b).  Although the allegations are insufficient at this point, Hensel will be permitted to replead this claim with particularity.

(#37).  Monsanto again moves to dismiss Count II for failure to plead allegations of "lying" and "dishonesty" properly.  Specifically, Monsanto contends that Hensel's new allegations regarding misrepresentations made by Monsanto employees fail both Federal Rules of Civil Procedure 8 and 9(b).  Hensel added to its allegations a series of facts involving Bill Hensel repeatedly asking identified Monsanto employees how a certain large chain retailer could sell Monsanto corn seed for a certain price.  Hensel alleges that the employee "falsely stated that [he or she] did not know how that was possible" when in fact he or she knew the large chain retailer's "incredibly low prices were possible only because Monsanto was engaged in massive price discrimination."  [#42 at ¶¶ 21-25.] Hensel pleads dates and locations for these alleged misrepresentations.

7

Notwithstanding Hensel's new allegations, Monsanto insists that there was no falsity, and thus no breach, unless the employees had knowledge. That is, Monsanto argues Hensel did not even plead enough facts to satisfy Rule 8, which requires Hensel to plead sufficient factual matter to make the Monsanto employees' knowledge of their dishonesty plausible. *See Iqbal*, 556 U.S. at 678.

This Court disagrees. Again, Monsanto's analysis is misleading. Hensel did plead that the Monsanto employees knew the falsity of their representations. For example, Hensel pleaded

> these Monsanto employees knew that the Large Chain Retailers' incredibly low retail prices were possible only because Monsanto was engaged in massive price discrimination (over $100 per bag) in favor of Large Chain Retailers and against smaller independent dealers like Hensel Seed.

[#42 at ¶ 25.] Hensel thus pleaded the misrepresentations comprising its breach of contract claim with particularity and in satisfaction of both Rules 8 and 9(b).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Monsanto's motion to dismiss counterclaims is DENIED.

Dated this   30th   day of April, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE